UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Joseph Jeziorowski,

        Plaintiff,

        v.

Credit Protection Association, L.P.,

        Defendant.

ORDER AND MEMORANDUM
13-CV-1180(LJV)

## INTRODUCTION

On November 4, 2016, this Court issued a 30-day stay "for the limited purpose of allowing the plaintiff to file an amended petition in the U.S. Bankruptcy Court (Case No. 14-10069) in order to: (1) list this litigation as an asset of the Bankruptcy Estate, and (2) allow . . . the trustee to be substituted as plaintiff in this case." Docket Item 42. Pursuant to that order, the plaintiff filed both an amended petition in the related bankruptcy proceeding and an optimistically entitled "Unopposed Motion to Substitute Party." *See* Docket Items 45, 46. The accuracy of that motion's title was short lived: On January 26, 2017, the defendant filed a response opposing the motion, to which the plaintiff replied on February 2, 2017. Docket Items 49, 50.[1]

For the reasons that follow, this Court GRANTS the plaintiff's motion.

## BACKGROUND

Jeziorowski filed this action in December 2013, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Telephone

---

[1] In the meantime, this Court granted the plaintiff's request to extend the current scheduling order. Docket Item 51.

Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.* A short time later, in January 2014, Jeziorowski filed a voluntary Chapter VII petition in Bankruptcy Court. At the § 341(a) meeting of creditors, Jeziorowski mentioned his pending FDCPA/TCPA lawsuit, which he valued at about $1,000 (the statutory FDCPA cap per claim). Docket Item 29-1 at 1 (¶ 3); Docket Item 29-2 at 1 (¶ 4).[2] The United States Bankruptcy Trustee ("trustee") instructed him to have his attorney report to the Bankruptcy Court if his case had more significant value. After the meeting, the trustee reported that the debtor lacked assets; Jeziorowski received a discharge from Bankruptcy Court in April 2014; and the bankruptcy case was closed shortly thereafter. The FDCPA/TCPA lawsuit, however, remained pending.

In late 2015 or early 2016, Jeziorowski's attorney contacted the trustee to learn how to reopen the bankruptcy case so as to include the pending federal litigation in an amended petition. On January 27, 2016, the Bankruptcy Court reopened the plaintiff's petition.

After discovery was completed in this case, on February 1, 2016, the plaintiff moved to stay the proceedings so that the Bankruptcy Estate, as administered by the trustee, could be substituted as the plaintiff. Docket Item 29. In response, the defendant asked this Court to deny the plaintiff's motion to stay and to dismiss the plaintiff's complaint with prejudice. Docket Item 32. On March 12, 2016, this case was reassigned from the Honorable John T. Curtin to the undersigned. Docket Item 39. After a status update, this Court issued the above-mentioned stay, setting the stage for the instant motion.

---

[2] The defendant does not contest that this occurred but maintains that oral disclosure alone fails to disclose assets. Docket Item 32 at 3-4.

**APPLICABLE LAW**

A. **Chapter VII Voluntary Petition: Disclosure Requirements**

Under Chapter VII, a bankruptcy trustee can liquidate a debtor's assets and distribute the proceeds to creditors. Once a debtor files under Chapter VII, the debtor's assets, including any pending lawsuits or claims, can become the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.") (per curiam) (internal quotation marks and citation omitted).

Because the complete disclosure of assets is "essential to the proper functioning of the bankruptcy system . . . .", *Chartschlaa*, 538 F.3d at 122, the law includes strict requirements. *See* Fed. R. Bankr. P. 1007(b) (listing mandatory schedules, statements, and other documents). For example, a "Statement of Financial Affairs" requires the debtor to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case." Docket Item 33-1 at 32. And the failure to disclose can result in severe penalties: unlike disclosed property that the trustee does not administer, which reverts to the debtor, "undisclosed assets automatically remain property of the estate after the case is closed . . . ." *Chartschlaa*, 538 F.3d at 122; 11 U.S.C. § 554.

Generally, "oral disclosure of [a] lawsuit [is] insufficient to satisfy [a debtor's] disclosure obligations under the bankruptcy code, which requires a debtor to file complete and accurate schedules relating to his finances." *Ibok v. SIAC–Sector Inc.*, 470 F. App'x 27, 29 (2d Cir. 2012) (summary order) (citing *Chartschlaa*, 538 F.3d at

122–23); *see also Guay v. Burack*, 677 F.3d 10, 19-20 (1st Cir. 2012); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x. 420, 424-27 (6th Cir. 2005); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001); *Barger v. City of Cartersville*, 348 F.3d 1289, 1295 (11th Cir. 2003).  As a result, when the only disclosure is oral disclosure, a debtor later seeking to profit from an otherwise undisclosed claim may lack standing, or the court may impose judicial estoppel to preclude him from pursuing it, or both.[3]

**B. Standing**

After discharge of the bankruptcy estate, any property disclosed by the debtor that has not been administered by the trustee is "abandoned"—that is, returned—to the debtor.  11 U.S.C. § 554(c).  But if property is not disclosed or there is incomplete disclosure, the "undisclosed assets automatically remain property of the estate after the case is closed." *Chartschlaa*, 538 F.3d at 122.  And if the undisclosed property is a lawsuit, the debtor "lacks standing to pursue" the undisclosed claim.  *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 148 (E.D.N.Y. 2010).  Such a claim therefore must be dismissed, at least where the debtor is pursuing the claim for his or her own benefit and the bankruptcy proceedings have not been reopened.  *See Rosenshein v. Kleban*, 918 F. Supp. 98, 103 (S.D.N.Y. 1996).

---

[3] Many cases address either standing or judicial estoppel or discuss both together. *Coffaro*, 721 F. Supp. 2d at 148 n.7 ("The issue of standing is closely intertwined with the above issue of judicial estoppel. Indeed, many cases address [them] together, as one issue."); *see also Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) ("Moreover, . . . it is questionable as to whether judicial estoppel was correctly applied . . . .  The more appropriate defense . . . was, instead, that the debtor lacked standing.").  This Court separately addresses both.

4

The standing of the bankruptcy trustee to pursue such claims, however, is a different matter. In cases that belong to the bankruptcy estate by virtue of a debtor's failure to disclose, the trustee becomes the real party in interest. *See Kohlbrenner v. Victor Belata Belting Co.*, 1998 WL 328639, at *2 (W.D.N.Y. June 3, 1998) (discussing Fed. R. Civ. P. 17(a)). In those cases, rather than denying an innocent trustee—who is pursuing assets for innocent creditors—the chance to recover because the debtor failed to disclose the lawsuit, "it is generally preferable to permit the bankruptcy trustee to be substituted, as the named plaintiff, in place of the debtor." *Kassner v. 2nd Ave. Delicatessen Inc.*, 2005 WL 1018187, at *4 (S.D.N.Y. Apr. 29, 2005). Thus, when a bankruptcy trustee contemplates pursuing a claim that might benefit creditors, courts have granted stays to give the trustee time to make a decision even when the debtor himself lacks standing due to the failure to disclose. *See, e.g.*, *Ayazi v. N.Y.C. Bd. of Educ.*, 315 F. App'x 313 (2d Cir. 2009) (finding that debtor lacked standing but granting stay to permit trustee time to adopt or abandon debtor's claim); *accord Kassner*, 2005 WL 1018187 (finding that debtor lacked standing and dismissing plaintiff's action with leave to restore for trustee to pursue claim). Such action by the court—as opposed to "simple dismissal of the complaint"—serves the purpose of protecting creditors. *Ayazi*, 315 F. App'x at 315.

### C. Judicial Estoppel

Judicial estoppel applies when three requirements are met: "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking

5

estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (*citing New Hampshire v. Maine,* 532 U.S. 742, 750-51 (2001)).[4] Common sense and fairness underlie the principle: "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire,* 532 U.S. at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

Judicial estoppel applies in "situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa*, 595 F.3d at 103 (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005)). For example, to protect the integrity of the judicial system, courts have applied judicial estoppel to bar a debtor from failing to disclose a claim in bankruptcy and then later asserting that claim to the advantage of the debtor and disadvantage of his creditors. *Leible v. Goodyear Tire & Rubber Co.*, 2015 WL 5542447 (W.D.N.Y. Sept. 18, 2015); *Coffaro*, 721 F. Supp. 2d at 145-46.

In at least two instances, however, a debtor's nondisclosure does not necessarily keep his or her claim from proceeding.

First, if the nondisclosure was inadvertent—for example, if it resulted from a "good faith mistake or unintentional error"—a debtor might not be judicially estopped from pursuing an undisclosed cause of action. *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir. 1997) (citations omitted). Courts have found the failure to disclose

---

[4] The third condition—an unfair advantage to the party opposing estoppel—may not always be a mandatory prerequisite. *See Adelphia Recovery Trust v. Goldman Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014).

6

potential or pending claims to be "inadvertent or due to mistake when either the debtor has no knowledge of the claims or no motive to conceal the claims." *Coffaro*, 721 F. Supp. 2d at 146 (quoting *Galin v. IRS*, 563 F. Supp. 2d 332, 340 (D. Conn. 2008)). And a court should consider all the attendant circumstances in deciding whether nondisclosure was purposeful or inadvertent. *E.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363-64 (3d Cir. 1996) (weighing circumstances and finding good-faith nondisclosure).

Second, even if the debtor is judicially estopped from pursuing an undisclosed claim, the trustee is not necessarily estopped from pursuing the same claim on behalf of the creditors. Instead, courts have allowed trustees to pursue an estopped debtor's claim so long as the trustee has not abandoned the claim or taken an inconsistent position with regard to it. *See Parker*, 365 F.3d at 1272; *Reed v. City of Arlington*, 650 F.3d 571, 573-79 (5th Cir. 2011). This flexibility both "prevent[s] an alleged wrongdoer from obtaining a windfall because the debtor failed to schedule its claims and . . . ensure[s] that the creditors benefit from any recovery." *Rosenshein*, 918 F. Supp. at 103.

On the other hand, the estopped debtor should not benefit personally—that is, receive "an undeserved windfall"—from the intentional failure to disclose a cause of action on his schedule of assets. *See Parker*, 365 F.3d at 1273 n. 4. For that reason, defendants might successfully invoke judicial estoppel to limit a trustee's recovery to what is necessary to satisfy creditors and trustee expenses. *Id.*; *Grammer v. Mercedes Benz of Manhattan*, 2014 WL 1040991, at *6 (S.D.N.Y. 2014) ("[The Trustee] may

7

litigate the claims solely for the benefit of the estate and its creditors, but the Trustee may not seek any recovery for [the debtor's] benefit.").

### **DISCUSSION**

Here, the defendant invokes the doctrine of judicial estoppel to oppose the plaintiff's motion to substitute. More specifically, the defendant argues that Jeziorowski's failure to disclose this litigation in writing during his bankruptcy proceeding now estops him from pursuing it. Docket 49 at 3-6. The defendant asserts that the $6,000 statutory exemption to which the plaintiff would be entitled personally in connection with this case likewise should estop the trustee from pursuing the claims. *Id.* at 7. And the defendant also argues that Jeziorowski's failure to disclose the claims in writing eliminates his standing to pursue them.

The defendant's arguments are misplaced. First, Jeziorowski's standing is not in issue because the trustee will be substituted in his place. Second, there is no reason to judicially estop the trustee, who has never taken a position contrary to his current position. Indeed, estopping the trustee from pursuing Jeziorowski's claims would work the sort of unfair windfall—this time, to the defendant—that equity is designed to prevent. *See Rosenshein*, 918 F. Supp. at 103.

Moreover, the $6,000 statutory exemption to which Jeziorowski may be entitled does not require a different result for the simple reason that Jeziorowski's nondisclosure plainly was inadvertent. Given that he filed his FDCPA/TCPA claim in December 2013 and failed to disclose it in writing when he declared bankruptcy a month later, Jeziorowski clearly knew about the claim. But he had no reason not to disclose it in writing, especially because he told the trustee about it at the meeting of creditors in

January 2014. Under the circumstances, it is far more likely that Jeziorowski had no idea that his claim might have substantial value (and therefore was not concerned about it) than that he was hiding it and hoping to obtain a windfall later on. And the fact that his lawyer in the FDCPA/TCPA case moved to reopen the bankruptcy to include any assets obtained through the lawsuit underscores that conclusion. Thus, there is no basis for concluding that Jeziorowski deliberately was asserting inconsistent positions in order to gain an advantage; on the contrary, there is every reason to conclude that his nondisclosure was inadvertent and that he acted in good faith. *See Ryan Operations G.P.*, 81 F.3d at 363 ("[T]here is no basis in this case for inferring that [the debtor] deliberately asserted inconsistent positions in order to gain advantage—i.e., that it played fast and loose with the courts.").

Jeziorowski's original complaint in his FDCPA/TCPA case did not include a specific damage claim, *see* Docket Item 1 at 5; Docket Item 1-1 at 1, so it does not appear he was attempting to conceal the claim's value when he told the trustee that it might be worth only around $1,000.[5] In fact, within days of the January 31, 2016 deadline for fact depositions—when he must have had a better, updated estimate of the value of his case—Jeziorowski reported to the Bankruptcy Court through his attorney that his case had significant value. *See* Bankruptcy Docket Case No. 14-10069 (bankruptcy reopened on January 27, 2016, to allow for amended petition); Docket Item 29 (motion to stay this action on February 1, 2016).

This is not a case like *Burnes*, where the debtor disclosed assets only after his adversary forced his hand. *See* 291 F.3d at 1288 ("Allowing [a debtor] to back-up, re-

---

[5] Not coincidentally, FDCPA claims have a statutory cap of $1,000 per plaintiff. 15 U.S.C. § 1629k(b)(1).

open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them."). Indeed, although Jeziorowski's oral statement to the trustee that he had a pending claim might not have been a legally sufficient disclosure, it is solid evidence that Jeziorowski was not trying to dupe the court system, the trustee, the creditors, or anyone else. *See Ryan Operations G.P.*, 81 F.3d at 364 ("[P]olicy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding."); *see also Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897-99 (6th Cir. 2004) (declining to apply judicial estoppel against plaintiffs who failed to schedule potential claim, but made trustee and court aware of it). For all these reasons, Jeziorowski is not judicially estopped from pursuing this action, and he also may pursue the $6,000 wild-card exemption, pursuant to 11 U.S.C. § 522(d)(5), listed in his amended schedule of assets. *See* Docket Item 43-6 at 13.

In sum, the trustee may pursue this claim as the substituted plaintiff, and, if he prevails, Jeziorowski may receive the first $6,000 of the proceeds from this case if the statutory exemption entitles him to that recovery.

## **CONCLUSION**

For the reasons addressed above, the plaintiff's motion to substitute Morris L. Horwitz, Trustee for the Estate of Jeziorowski, as the plaintiff in this action and to amend the caption in this proceeding (Docket Item 46) is GRANTED.

SO ORDERED.

Dated: May 1, 2017
       Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATED DISTRICT JUDGE